**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**AT MANHATTAN**

KEVIN BACHHUBER, on behalf of himself and
others similarly situated,

               Plaintiff,

           v.

BERKMAN FUNDING LLC,

               Defendant.

Case No.

CLASS ACTION COMPLAINT

<u>JURY TRIAL DEMANDED</u>

**CLASS ACTION COMPLAINT**

1.     Kevin Bachhuber ("Plaintiff") through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Berkman Funding LLC ("Berkman Funding" or "Defendant").

2.     This class action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3.     Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

4.     Now, Plaintiff brings this class action on behalf of himself, and all others harassed by Defendant and its unlawful telemarketing tactics.

**PARTIES**

5.     Plaintiff, Kevin Bachhuber, is a natural person and a citizen of Wisconsin where he intends to remain.

6.     Defendant, Berkman Funding LLC, is a limited liability company organized in New

1

York and with its principal place of business in New York, NY.

## JURISDICTION AND VENUE

7.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

8.      This Court has personal jurisdiction over Defendant because it regularly conducts business in this District, including making telemarketing solicitations into this District and soliciting business from this District.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district, namely the telemarketing solicitations to the Plaintiff.

## BACKGROUND

10.      Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

11.      "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear,

2

as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

12.     As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

13.     The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227 (c)(5).

14.     For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227 (c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id.*

15.     Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

16.     The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

17.     The Supreme Court is clear that text messages are "calls" under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].").

18.     The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id.*

19. For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

*Plaintiff Kevin Bachhuber*

20. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21. Plaintiff's cellular telephone number is 608-345-XXXX (the "telephone number").

22. Plaintiff personally listed his telephone number, 608-345-XXXX, on the National Do-Not-Call Registry on March 17, 2012, and has not removed it from the Registry since that time.

23. Plaintiff uses this telephone number for personal, residential, and household purposes.

24. Throughout the class period, Plaintiff's telephone number 608-345-XXXX was his exclusive residential telephone number and he did not maintain a landline telephone number.

25. Plaintiff has not used this telephone number for business purposes.

26. Plaintiff's telephone number is not associated with any business, nor does Plaintiff use the number for business purposes.

27. Plaintiff has been the sole owner of the telephone number 608-345-XXXX for approximately the last fourteen (14) years.

28. Throughout Plaintiff's ownership of telephone number 608-345-XXXX, Plaintiff has been the sole remunerator of bills associated with its service.

29. Plaintiff has never received reimbursement from any business for use of this telephone number nor taken any tax deductions for any business-related uses of this telephone

4

number.

30.    From 2014 to 2016, while Plaintiff was associated with the business Big Cricket Farms, Plaintiff used a separate telephone number for business related calls.

31.    Similarly, between 2016 and 2024 during Plaintiff's association with the business Bachhuber Consulting LLC, Plaintiff used a separate telephone number, 608-512-0595, for business related calls.

32.    The website for Bachhuber Consulting, which is no longer in operation, displayed the number 608-512-0595, not Plaintiff's cellular telephone number 608-345-XXXX. Below is a screenshot from the Internet Archive displaying the "Contact" section of the website for Bachhuber Consulting:



33.    Similarly, Plaintiff's business cards listed Plaintiff's number as 608-512-0595, not 608-345-XXXX.

34.    In fact, if Plaintiff received a business-related call on his cellular telephone number 608-345-XXXX, Plaintiff would redirect the caller to his business number.

35.    Furthermore, Plaintiff's voicemail on his cellular telephone during the operation of

Bachhuber Consulting played a voicemail message to the effect of the following: "You have reached the personal cell of Kevin Bachhuber. For business-related calls, please contact me at 608-512-0595."

36.    Plaintiff is not a current or former customer of Defendant and has never consented to receive telephone solicitations from Defendant.

37.    Plaintiff has never had a business relationship with Defendant.

38.    Plaintiff never provided his telephone number to Defendant.

### *Defendant Engages in Telemarketing*

39.    Defendant is a business funding company that offers alternative financing products to small businesses throughout the United States. According to Defendant's website, it provides "working capital" and "financial solutions for small businesses," including merchant cash advances, revenue-based funding, business lines of credit, invoice financing, and MCA consolidation services. Defendant advertises that businesses can receive "same-day" funding ranging from "$10K to $2M."[1]

40.    Simply put, sells business financing and merchant cash advance services to consumers and small businesses.

41.    A screenshot of Defendant's website is provided below.[2]

---

[1] *Working capital decided in hours, funded today.* BERKMAN FINANCIAL, https://berkmanfinancial.com (last visited May 26, 2026).
[2] *Id.*



42.    Notably, in Defendant's industry, telemarketing is a widespread and standard practice.[3] Indeed, the Bureau of Labor Statistics has reported that the "Credit Intermediation and Related Activities" industry has one of the highest levels of telemarketing.[4] Consistent with industry custom, merchant cash advance and business funding companies routinely market their services through outbound telephone calls and text message campaigns.

43.    To sell its business financing and merchant cash advance services, Defendant (or its third-party agents) engages in telemarketing campaigns.

44.    Defendant has already received numerous complaints about its unlawful telemarketing practices. For example, consumers online have complained that Defendant engaged in "aggressive marketing," including repeated calls, emails, and spam marketing relating to business funding offers.

---

[3] *Occupational Employment and Wage Statistics: Telemarketers*, U.S. CENSUS BUREAU (May 2023) https://www.bls.gov/oes/2023/may/oes419041.htm.
[4] *Id*.

45.    Screenshots of consumer complaints on Yelp and Reddit are provided below.[5]



**Brent V.**
0   6   0

★☆☆☆☆  10 months ago

Constant spam, even after requesting to be removed from their lists. They keep contacting through multiple channels, which feels predatory and unprofessional. The entire operation comes across as shady, with aggressive tactics and no respect for privacy or consent. If this is how they treat potential customers, I can only imagine what dealing with them as an actual client would be like. Would strongly advise avoiding this company.



← r/loansforsmallbusiness • 3mo ago
Chelseal                                                        ...

**Berkman Financial - stop the spam!**

getting bombarded by berkman financial. calls, emails, everything. promising fast funding but the aggressive marketing is a huge turn off. is it even worth a call? some say they're okay, others say high costs. if you've actually gotten a loan from them, was it a good deal or a headache?

***Defendant Violated the TCPA***

46.    As explained below, Defendant violated the TCPA.

47.    On September 26, 2023, Plaintiff received a telephone contact from phone number (201) 201-1238:

*"Hi Kevin! I'm with Berkman Financial and I've been trying to reach you. I just want to make sure you received the link to our quick and easy application for business funding. https://form.jotform.com/223135055723149"*

48.    On October 23, 2023, Plaintiff received a telephone contact from phone number (201) 201-1238:

---

[5] *See Berkman Financial – stop the spam!* REDDIT, https://www.reddit.com/r/loansforsmallbusiness/comments/1rrq2oo/berkman_financial_stop_the _spam/ and *Berkman Financial,* YELP, https://m.yelp.com/biz/berkman-financial-new-york (last visited May 26, 2026).

*"Hi Kevin! Are you still in need of funding? At Berkman Financial, we know how important working capital is to your business. We're here to help! https://form.jotform.com/223135055753149"*

49.    The    aforementioned    telephone    solicitations    to    Plaintiff were    unwanted, nonconsensual encounters, as Plaintiff never provided his consent or requested the text messages.

50.    Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed.

51.    On information and belief, Defendant will continue to place numerous telephonic solicitations to Plaintiff and Class Members.

## I.    CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

**Do Not Call Registry Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

**Internal Do-Not-Call Registry Class**: All persons in the United States (1) whose telephone numbers received two or more telephone calls from, or on behalf of, Defendant (2) during a 12-month period,
(3) within four years prior to the commencement of this litigation and up until the date of trial, (4) and who had previously requested for the telephone calls to stop.

53.    Together, the various classes are referred to as the "Class."

54.    Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate

family.

55.     Plaintiff reserves the right to amend the class definition.

56.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

57.     **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

58.     **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

59.     **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarking practices.

60.     **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

61.     **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

a.      whether Defendant violated the TCPA;

10

b.        whether Defendant violated the TCPA willfully and knowingly;

c.        whether Plaintiff is entitled to statutory damages;

d.        whether Plaintiff is entitled to treble damages;

e.        whether Defendant should be enjoined from further TCPA violations.

62.        **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

<u>**COUNT I**</u>
**Telephone Consumer Protection Act (Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

63.        Plaintiff repeats and incorporates the allegations set forth above.

64.        The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing solicitations, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

65.    The Defendant's violations were negligent, willful, or knowing.

66.    As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

67.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing solicitations to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

### COUNT II
### Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d) (On Behalf of Plaintiff and the Internal Do-Not-Call Registry Class)

68.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

69.    In pertinent part, 47 C.F.R. § 64.1200(d) provides:

No person or entity shall initiate…any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1)    *Written policy*. Persons or entities making…calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2)    *Training of personnel engaged in telemarketing*. Personnel engaged in…any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3)    Recording, disclosure of do-not-call requests. If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten

(10) business days from the receipt of such request. If such requests are recorded

12

or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-

not-call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.

70. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

71. Plaintiff and the Internal Do-Not-Call Class Members made requests to Defendant not to receive telemarketing calls from Defendant.

72. Defendant failed to honor Plaintiff's and the Internal Do-Not-Call Class Members' opt-out requests and instead continued to call Plaintiff and the Internal Do-Not-Call Class Members to harass them into making purchases from Defendant.

73. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to (1) institute procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity; (2) implement a written policy, available upon demand, for maintaining a do-not-call list; and (3) train its personnel engaged in telemarketing in the existence and use of the do-not-call list.

74. Plaintiff and the Internal Do-Not-Call Class Members are informed and believe that Defendant (1) has not instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity; (2) has not implemented a written policy, available upon demand, for maintaining a do-not-call list; and (3) does not train its personnel engaged in telemarketing in the existence and use of the do-not-call list.

75. The details and specific facts regarding Defendant's failure to maintain the required

13

policies, implement the required procedures, and train its personnel regarding the same, are solely within Defendant's knowledge and possession.

76. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telephonic solicitations, except for emergency purposes, to the Plaintiff and the Internal Do-Not-Call Class despite having asked Defendant to cease its telephonic solicitations.

77. Defendant violated the TCPA willfully or knowingly.

78. Plaintiff and Internal Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

79. Plaintiff and Internal Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Internal Do-Not-Call Class Members.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendant from soliciting telephone numbers advertising their goods or services, except for emergency purposes, to numbers on the National Do Not Call Registry or using an automated dialer in the future;

B. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA, and $1,500 for each knowing or willful violation; and

C. An order certifying this action to be a proper class action pursuant to Federal Rule

14

of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

D.      Such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

DATED this 26th day of May, 2026.

Respectfully submitted,

*/s/ Anthony I. Paronich*
Anthony I. Paronich (*pro hac vice*)
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff and Proposed Class*

15